UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

STEPHEN BRACCIALE and SAINT
ANTON CAPITAL, LLC,

    Plaintiffs,

v.                                            Case No: 8:17-cv-2040-T-36AEP

PEDRO VALDEZ and NATIONAL
SOURCING, INC.,

    Defendants.
_____/

# **ORDER**

This matter comes before the Court upon the Plaintiffs' Emergency Motion to Remand, Motion for Attorneys' Fees under 28 U.S.C. § 1447(c) and Motion for Expedited Briefing Schedule (Doc. 6), and Defendants' response in opposition (Doc. 12). In the motion, Plaintiffs state that this Court lacks subject matter jurisdiction over the case because the claims in the Complaint do not arise under federal law. The Court, having considered the motion and being fully advised in the premises, will grant-in-part Plaintiffs' Emergency Motion to Remand, Motion for Attorneys' Fees under 28 U.S.C. § 1447(c) and Motion for Expedited Briefing Schedule.

    **I.    BACKGROUND**

The Complaint, one of many between the parties, involves a dispute between Stephen Bracciale and Saint Anton Capitol, LLC ("SAC") and Pedro Valdez and National Sourcing, Inc. ("NSI"). NSI is a Service-Disabled Veteran Owned Small Business ("SDVOSB") which provides a variety of services to government agencies. Doc. 2 at ¶ 9. The relationship between the parties and the underlying documents sued upon as described in the Complaint (and the related actions) are as follows.

NSI employed Bracciale under a Consulting Agreement through July 18, 2017, to assist in marketing, business development, client relations, training, operations, and contract support. *Id*. at ¶ 12. Valdez terminated Bracciale as a consultant and employee, locked him out of the NSI offices, and removed him as a signer on the NSI bank account. *Id*. at ¶ 13. Bracciale contends that he is chiefly responsible for the business and infrastructure that has led to NSI's success. *Id*. at ¶ 11.

In 2011, NSI hired Valdez to assist in recruiting and hiring of employees. *Id*. at ¶ 16. In April 2013, to maintain its status as a SDVOSB, Valdez became a director and officer of NSI, and purchased 51% of NSI's shares from the former interim owner. *Id.* at ¶ 16. To finance this transaction, Valdez entered into the following agreements: a Promissory Note for $5.1 million dollars from Valdez to SAC (a company owned by Bracciale) agreeing to pay ten interest-only payments of $153,000 every six months to SAC with a final balloon payment of $5.1 million due April 1, 2018; a Security Agreement for $5.1 million (which Valdez and NSI granted to SAC to secure the Promissory Note) which includes as security Valdez's pledge of his shares and NSI's grant of its collateral; and a Stock Pledge Agreement between Valdez and SAC in connection with the Promissory Note and Security Agreement. *Id*. at ¶ 18. Bracciale also entered into financing agreements with NSI including a $1 million Note and Security Agreement and a $575,000 Note and Security Agreement. The Complaint alleges that Valdez and NSI have defaulted on their obligations and that Valdez is causing irreparable harm to NSI. *See id*. at § D.  The Complaint includes claims for default on the Valdez Promissory Note and breach of fiduciary duty against NSI and Valdez.  *Id*. at ¶¶ 35-40, 42-47.

> a. The Valdez State Action

On July 18, 2017, Valdez filed a state court complaint styled *Pedro Valdez, et al. v. Stephen Bracciale, et al.*, case No. 17-CA-6700 in the Thirteenth Judicial Circuit Court in and for

Hillsborough County, Florida (the "Valdez State Action") requesting declaratory relief regarding the ambiguities in the Valdez Promissory Note, seeking equitable accounting on the Valdez Promissory Note, and alleging claims for conversion, fraud, and conspiracy against Bracciale and other parties. *See* Doc. 6-1. That same day Valdez changed the locks to NSI's offices and fired Bracciale as a consultant to NSI. Doc. 6 at 3. Bracciale served Valdez with default notices and filed an Emergency Motion for Appointment of Receiver. *See* Doc. 6-2. On August 4, 2017, the state court held a hearing on the Emergency Motion for Appointment of Receiver and ordered the appointment of a consultant to oversee the work of NSI's forensic accountant. *See* Doc. 6-4. It also continued the evidentiary hearing to August 28, 2017. Doc. 6 at 3. On August 16, 2017, Valdez voluntarily dismissed the case without prejudice. *See* Doc. 6-5.

### b. The Valdez Federal Action

On August 16, 2017, NSI and Valdez filed a federal court complaint, styled *National Sourcing, Inc., et al., v. Stephen Bracciale, et al.*, case no. 8:17-cv-1950-36JSS in the Middle District of Florida, Tampa Division, against Bracciale, SAC, and others (the "Valdez Federal Action") (referred to in the motion as the "NSI Action" and in the response as the "First Filed Action"). *See* Doc. 6- 5. The Valdez Federal Action alleges claims for a breach of fiduciary duty, aiding and abetting breach of fiduciary duty, and fraudulent inducement pursuant to Florida Statutes and requests declaratory relief pursuant to 28 U.S.C. §§ 2201-2202. *See* Doc. 6-5. It alleges that after Valdez missed some payments on the Valdez Promissory Note, Bracciale threatened to default him, so NSI terminated the Administrative Services Agreement, Consulting Agreement, and Bracciale's employment with NSI on July 18, 2017. Doc. 6-5 at ¶¶ 47-48. The Valdez Federal Action alleges federal question jurisdiction by asserting that there is a present and actual controversy regarding the Administrative Services Agreement, Security Agreement and the

3

Valdez Promissory Note, *id*. at ¶¶ 69-71; because they are void as illegal and unenforceable by purportedly violating 13 C.F.R. § 124.106, 38 C.F.R. § 74.4, and by virtue of overpaying and vesting control of NSI to Bracciale as a non-veteran. *Id*. at ¶ 71.

### c. The State Court Action

On August 18, 2017, Bracciale and SAC filed the Verified Complaint and Demand for Injunctive Relief (the "Complaint") against Valdez and NSI alleging breach of a promissory note and breach of fiduciary duty.[1] *See* Doc. 6-6. On August 21, 2017, Bracciale and SAC filed a Verified Emergency Ex Parte Motion for Temporary Injunction (the "Emergency Motion") to enjoin Valdez and NSI from conducting business operations and to request that the court temporarily appoint an additional signatory to the NSI bank account. *See* Doc. 6-9.

In the Emergency Motion, the Plaintiffs alleged that Valdez locked Bracciale out of NSI's offices and was incurring liabilities on behalf of NSI by secretly relocating its offices, hiring three additional employees, neglecting NSI accounts payable, withdrawing funds from NSI accounts, giving himself a 64% raise, and making misrepresentations about NSI's financial accounts, among other things. *Id*. at 2.

On August 23, 2017, the state court entered an ex parte Temporary Restraining Order (the "TRO") without notice and without bond which took effect immediately. *See* Doc. 6-11. It restrained and enjoined Valdez, NSI, and all individuals or entities working with them from withdrawing or moving funds, charging credit accounts, entering into agreements, and incurring liabilities, among other things. Doc. 6-11 at 2. Ultimately, it ordered Valdez and NSI not to "[c]omitt[] any acts that would jeopardize the ongoing operations of NSI." *Id*. The state court set

---

[1] Valdez and NSI assert that they were not served with the Complaint prior to removal and they do not waive objections to defects in service of process or attendant jurisdictional defects. Doc. 12 at 8 n.1.

a hearing date for the TRO on August 28, 2017, at 3:30 p.m. and ordered that it would remain in full force and effect up to and including August 29, 2017, unless modified or extended by order of the state court. *Id*.

### d. The Notice of Removal

On August 25, 2017, Valdez and NSI filed a Notice of Removal, which removed the State Court Action to this Court. Doc. 1. In their Notice of Removal, Defendants state that this Court has subject matter jurisdiction over the action because it involves a federal question. Specifically, they assert that because the regulations regarding NSI's certification as a SDVOSB under the Small Business Act ("SBA") are at issue in the Valdez Federal Action, which is the first-filed case, it implicates a federal question in this case. Defendants allude to the eligibility requirements for the Veteran's Administration ("VA") SDVOSB contracting program as set forth in 13 C.F.R. §§ 121, 125 and 38 C.F.R. § 74. *Id*. at ¶¶ 7-8.

They assert that the SBA and SDVOSB regulations both require that a corporation qualified as a SDVOSB have at least 50% of the aggregate of all stock outstanding and at least fifty-one percent of each class of voting stock outstanding unconditionally owned by one or more service-disabled veterans. *Id*. at ¶ 9. They also assert that the regulations require that the management and daily business operations for the corporation be controlled by one or more service-disabled veterans. *See id*. at ¶ 10-12. Defendants argue that because the Complaint's allegations regarding NSI's SDVOSB status include that NSI must be operated by an officially designated service-disabled veteran, and that Valdez fulfills that role for NSI, the documents upon which the Plaintiffs sue are "directly controlled by the limitations and dictates of the SBA and the VA SDVOSB regulations." Doc. 1 at ¶ 15.

## II. LEGAL STANDARD

Removal of cases to federal court is governed by 28 U.S.C. § 1441, which provides in part that "[e]xcept as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction may be removed by the defendant or the defendants to the district court of the United States for the district and division embracing the place where such action is pending." *Id.* at § 1441(a). Federal district courts are courts of limited jurisdiction. *See Morrison v. Allstate Indem. Co.*, 228 F.3d 1255, 1260–61 (11th Cir. 2000). Parties seeking to invoke subject matter jurisdiction must show that the underlying claim is based upon either diversity jurisdiction (cases in which the parties are of diverse citizenship and "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs"), or the existence of a federal question (i.e., "a civil action arising under the Constitution, laws, or treaties of the United States"). *See* 28 U.S.C. §§ 1331–1332.

Removal jurisdiction is construed narrowly with all doubts resolved in favor of remand. *See Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 411 (11th Cir. 1999); *Pacheco de Perez v. AT & T Co.*, 139 F.3d 1368, 1373 (11th Cir. 1998). "A removing defendant bears the burden of proving proper federal jurisdiction." *Leonard v. Enter. Rent a Car*, 279 F.3d 967, 972 (11th Cir. 2002) (citing *Williams v. Best Buy Co.*, 269 F.3d 1316, 1319–20 (11th Cir. 2001)). In assessing whether removal is proper, the district court considers "only the limited universe of evidence available when the motion to remand is filed—i.e., the notice of removal and accompanying documents. If that evidence is insufficient to establish that removal was proper or that jurisdiction was present, neither the defendants nor the court may speculate in an attempt to make up for the notice's failings." *Lowery v. Ala. Power Co.*, 483 F.3d 1184, 1213–15 (11th Cir. 2007), *cert. denied*, 553 U.S. 1080, 128 S.Ct. 2877, 171 L.Ed.2d 812 (2008).

Where the alleged basis for federal jurisdiction is a federal question under 42 U.S.C. § 1331, as it is in this case, the removing defendant has the burden of demonstrating the action "aris[es] under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. The federal question at issue "must appear on the face of the plaintiff's well-pleaded complaint." *Cmty. State Bank v. Strong*, 651 F.3d 1241, 1251 (11th Cir. 2011). "The presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). "The rule makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law." *Id*.

There are exceptions to the well-pleaded complaint rule. In general terms, removal is improper if based solely upon a plaintiff's allegation of an anticipated defense or if based upon a defendant's responsive pleading." *Lazuka v. FDIC*, 931 F.2d 1530, 1534 (11th Cir. 1991) (citing *Merrell Dow Pharmaceuticals Inc. v. Thompson*, 478 U.S. 804, 808, 809 n. 6 (1986)). Also "when a federal statute wholly displaces the state-law cause of action through complete pre-emption," the state claim can be removed. *Beneficial Nat. Bank v. Anderson*, 539 U.S. 1, 8 (2003); *Franchise Tax Bd. of Cal. v. Construction Laborers Vacation Trust for Southern Cal.*, 463 U.S. 1, 9–10 (1983). This is so because "[w]hen the federal statute completely pre-empts the state-law cause of action, a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law." *Id*. And the "artful-pleading" doctrine provides exceptions to the well-pleaded complaint rule. Under one of these exceptions, even if it appears from the complaint that only state-law causes of action are actually pleaded, a federal question will be inferred where "the vindication of a right under state law necessarily turn[s] on some

construction of federal law." *Merrel Dow*, 478 U.S. at 808. Under this analysis, "in limited circumstances, federal-question jurisdiction may be ... available if a substantial, disputed, question of federal law is a necessary element of a state cause of action." *Jairath v. Dyer*, 154 F.3d 1280, 1282 (11th Cir. 1998). In making this determination, "[t]he removing court looks to the substance of the complaint, not the labels used in it." *In re Carter*, 618 F.2d 1093, 1101 (5th Cir. 1980).

When only state-law claims are asserted in a complaint, a claim "aris[es] under" federal law if a federal issue is: "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in the federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton*, 568 U.S. 251 (2013).

### III. DISCUSSION

Defendants contend that Plaintiffs' claims arise under federal law. To determine whether the claims arise under federal law, the Court will examine the Complaint's "well pleaded allegations" and ignore Defendants' potential defenses. The Complaint raises only state law claims. Therefore, the Court must determine whether the claims raise a substantial, disputed, question of federal law.

First, the Court will address the *Gunn* factors. The parties have not briefed the issue, but typically there are only a "special and small category of cases" that satisfy the *Gunn* test. *Gunn*, 568 U.S. at 258. The Complaint must meet all four factors to confer subject matter jurisdiction. *Id*. In *Gunn*, the Supreme Court applied the four-factor analysis to determine whether a state-law legal malpractice claim arose under federal law for the purpose of federal question jurisdiction. Beginning with the first factor, the Court held that the federal issue was "necessarily raised" because adjudication of the affirmative claim of legal malpractice required the application of federal patent law. *Id*. at 259.

Here, however, adjudication of Plaintiffs' claims for default on a promissory note and breach of fiduciary duty do not require the application or interpretation of federal law. A claim for breach of contract requires proof of: (1) the existence of a contract; (2) a breach of that contract; (3) causation; and (4) damages. *Handi–Van, Inc. v. Broward Cnty.*, 116 So. 3d 530, 541 (Fla. 4th DCA 2013). And "[t]he elements of a claim for breach of fiduciary duty are: the existence of a fiduciary duty, and the breach of that duty such that it is the proximate cause of the plaintiff's damages." *Gracey v. Eaker*, 837 So. 2d 348, 353 (Fla. 2002). It does not appear that either of these claims requires the application of federal law. A federal issue is therefore not "necessarily raised" by the Complaint. *See Dickerson v. Nahra*, 809-CV-963-T-17TGW, 2010 WL 746707, at *6 (M.D. Fla. Mar. 2, 2010) ("While the violation of federal regulations may be evidence of the breach of fiduciary duty under substantive principles of state law, the breach of fiduciary duty claim remains a state law claim.").

Based on a review of the pleadings before the Court, although the Complaint is "capable of resolution in federal court without disrupting the federal-state balance," the SBA and SDVOSB federal regulations are not necessarily raised, or actually disputed, nor are they substantial[2] to the Plaintiffs' claims regarding default on the promissory note and breach of fiduciary duty. As alleged in the Complaint, the Valdez Promissory Note lays out the terms of the agreement for repayment and the conditions of default. And the fiduciary duties allegedly breached derive not necessarily from Valdez's status as a service-disabled veteran, but as an officer of NSI entrusted with the care to run the business. Although his status as an officer in NSI is due in part to being a service-disabled veteran, and permits NSI to operate as a SDVOSB, it is not the basis for the alleged

---

[2] Substantiality is evaluated by looking to the importance of the issue to the federal system as a whole. *Gunn*, 133 S.Ct. at 1067. Issues that will "change the real-world result" for future cases and future litigants are substantial. *Id*.

9

breaches, even if it raises disputed questions of the federal regulations. *See id*. at 258-59 (noting that although a case may necessarily raise disputed questions of federal law, its nature may make it "unlikely to have the sort of significance for the federal system necessary to establish jurisdiction.").

In summary, federal issues do not appear on the face of the Complaint. Those federal issues that are implied by passing reference to the federal regulations are not "necessarily raised" or "substantial" and therefore do not confer federal question jurisdiction. In any event, the Court has substantial doubt that the claims satisfy all four factors of the *Gunn* test, which it must resolve in favor of remand. The Court will now examine the various theories upon which the Defendants explicitly or implicitly rely to invoke this Court's subject matter jurisdiction.

### a. Artful Pleading Doctrine

Defendants argue that Plaintiffs have pleaded the Complaint in an " 'artful' manner that avoids citing regulations that it implicitly and pervasively references." Doc. 12 at ¶ 25. An "independent corollary" to the well-pleaded complaint rule is that "a plaintiff may not defeat removal by omitting to plead necessary federal questions." *Rivet v. Regions Bank of La.*, 522 U.S. 470, 475 (1998). Therefore, if a court concludes that a plaintiff has "artfully pleaded" claims this way, it may uphold removal even though no federal question appears on the face of the plaintiff's complaint. *Id*. Stated differently, "[t]he artful pleading doctrine allows removal where federal law completely preempts a plaintiff's state-law claim." *Id*.

The doctrine assumes that the plaintiff could originally have filed suit in federal court, if not for the "artful" avoidance of an allegation of a claim arising under federal law. *See Merrell Dow Pharms., Inc.*, 478 U.S. at 808. In this case, however, Defendants make no showing that Plaintiffs could have initially filed their claim in federal court. As discussed throughout this Order,

10

Plaintiffs' claims do not rely upon federal regulations, nor is the Court required to interpret the federal regulations to determine whether Plaintiffs have established their claims. The Complaint does briefly reference NSI's status as a SDVOSB in the background facts to establish the relationship between the parties. But the causes of action do not require interpretation of the federal regulations to establish Plaintiffs' entitlement to a remedy.

### b. Declaratory Judgment Act

The Declaratory Judgment Act is procedural and does not confer federal question jurisdiction on its own. *Hill Dermaceuticals, Inc. v. Anthem, Inc.,* 228 F. Supp. 3d 1292, 1299 (M.D. Fla. 2017) (citing *Stuart Weitzman, LLC v. Microcomputer Res., Inc.,* 542 F.3d 859, 861–62 (11th Cir. 2008). *See also Garrison v. Caliber Home Loans, Inc.*, 233 F. Supp. 3d 1282, 1296 (M.D. Fla. 2017) (noting that "courts 'may discretionarily decline to exercise jurisdiction over a declaratory-judgment action even if subject-matter jurisdiction requirements otherwise are met.'"). Therefore, if a party seeks to invoke this Court's subject matter jurisdiction under the Declaratory Judgment Act, it must demonstrate that "absent the availability of declaratory relief, the instant case could nonetheless have been brought in federal court." *Hill Dermaceuticals, Inc.*, 228 F. Supp. 3d at 1299 (quoting *Stuart Weitzman, LLC*, 542 F.3d at 862).

In this case, the Complaint does not make a claim under the Declaratory Judgment Act. The fact that the Defendants seek declaratory relief in the Valdez Federal Action[3] is insufficient to invoke this Court's jurisdiction over the instant action.

### c. Federal Defense

---

[3] Whether the Valdez Federal Action alleges a federal claim is a separate issue which the Court will take up in that case at the appropriate juncture.

Defendants argue that federal regulations dictate that a SDVOSB must be owned and controlled by a service-disabled veteran. The Complaint alleges that Bracciale now owns 100% of NIS, that Valdez improperly terminated Bracciale's employment, and that Valdez breached his fiduciary duty. Defendants argue that the Complaint "turn[s] upon the application and interpretation of federal law." Doc. 12 at ¶ 27. Defendants specifically argue that the Court must review the federal regulations to determine whether Valdez breached his fiduciary duties when he allegedly misrepresented small business standards, set his own compensation, and exercised control over the company's bank accounts. Doc. 12 at ¶¶ 29-30.

But it is the Defendants' potential defenses against these claims, not the claims themselves, which may turn on the interpretation of the federal regulations regarding SDVOSBs and the SBA. Even if a complaint raises a potential defense involving federal law, the cause of action does not necessarily arise under federal law. *Merrell Dow Pharm. Inc.*, 478 U.S. at 808. So, for example, the following are insufficient to allege a basis for removal based on federal question jurisdiction: a plaintiff alleging an anticipated defense to his cause of action and asserting that the defense is invalidated by a provision of the Constitution of the United States, a defense that relies on the preclusive effect of a prior federal judgment, and a defense that relies on the preemptive effect of a federal statute. *Anderson*, 539 U.S. at 6 (citing *Louisville & Nashville R. Co. v. Mottley*, 211 U.S. 149, 152, (1908); *Rivet*, 522 U.S. 470; *Franchise Tax Bd. of Cal.,* 463 U.S. 1)).

And the Defendants' arguments regarding the Court's need to interpret the SBA and SDVOSB regulations to resolve the breach of fiduciary duty claims are insufficient to confer jurisdiction. Although the Supreme Court noted that federal question jurisdiction may exist "where the vindication of a right under state law necessarily turn[s] on some construction of federal law[;]" *Merrell Dow Pharm. Inc.*, 478 U.S. at 808 (quoting *Franchise Tax Board*, 463 U.S. at 9);

the actual holding of *Franchise Tax Board* demonstrates that "this statement must be read with caution; the central issue presented in that case turned on the meaning of the Employee Retirement Income Security Act of 1974, … but [the Court] nevertheless concluded that federal jurisdiction was lacking." *Id*.

In this case, the vindication of Plaintiffs' rights under state law do not necessarily turn on construction of the federal regulations. But even if they did, it would not automatically confer jurisdiction on this Court. *See Dickerson*, 2010 WL 746707, at *7 (borrower that alleged lender breached its fiduciary duty to him in violation of Florida law and cited provisions of the Uniform Commercial Code and federal regulations did not transform his state law claim into one arising under federal law, even if lender expected to defend itself by pleading reliance on federal banking regulations). Therefore, the Defendants' arguments that the claims arise under federal law based on the cited regulations do not establish this court's subject matter jurisdiction.

### d. Complete Preemption

Although not argued by Defendants, the Court notes that the SBA does not completely preempt Plaintiffs' claims. Complete preemption occurs when the "preemptive force of the federal statute is 'so powerful as to displace entirely any state cause of action.' " *Stuart Weitzman, LLC*, 542 F.3d at 865. When a federal statute completely preempts a state law cause of action, "a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law" and becomes removable under 28 U.S.C. § 1441(b). *Anderson*, 539 U.S. at 8.

The doctrine of complete preemption is distinct from the doctrine of ordinary preemption. "[C]omplete preemption functions as a narrowly drawn means of assessing federal removal jurisdiction, while ordinary preemption operates to dismiss state claims on the merits and may be

invoked in either federal or state court." *Smith v. GTE Corp.*, 236 F.3d 1292, 1313 (11th Cir. 2001) (quoting *Blab T.V. of Mobile, Inc. v. Comcast Cable Commc'ns, Inc*., 182 F.3d 851, 854–55 (11th Cir. 1999)). The Supreme Court has explained that "it is now settled law that a case may not be removed to federal court on the basis of a federal defense, including the defense of pre-emption, even if the defense is anticipated in the plaintiff's complaint, and ... is the only question truly at issue." *Caterpillar Inc.*, 482 U.S. at 393. Accordingly, "a federal law may substantively displace state law under ordinary preemption but lack the extraordinary force to create federal removal jurisdiction under the doctrine of complete preemption." *Geddes v. Am. Airlines, Inc*., 321 F.3d 1349, 1353 (11th Cir. 2003).

The Eleventh Circuit has held that the SBA does not completely preempt all state causes of action that implicate the standards created by the SBA. *See Tectonics, Inc. of Florida v. Castle Const. Co., Inc*., 753 F.2d 957, 962 (11th Cir. 1985) ("Similarly, an examination of the statutory scheme and legislative history of the Small Business Act leads us to conclude that Congress did not intend to occupy the entire field of small business concerns to the extent that all state remedies would be foreclosed for neither the statute nor the applicable regulations expressly preclude state action in this field or dictate preemption."). *See also Integrity Mgmt. Int'l, Inc. v. Tombs & Sons, Inc.*, 836 F.2d 485, 494–95 (10th Cir. 1987) (rejecting the proposition that "Congress intended to preclude states from using SBA standards as evidence of violations of the states' causes of actions."). The Defendants have not presented any facts or argument to lead the Court to depart from this general proposition. Therefore, the SBA does not completely preempt Plaintiffs' claims in the Complaint and therefore, it does not raise a federal question.

### e. First Filed Action

Defendants argue that because this Court first acquired subject matter jurisdiction over the parties and the disputes in the Valdez Federal Action, it now has exclusive jurisdiction over the parties in this case. Doc. 12 at 16. Defendants cite to *Klein & Heuchan, Inc. v. CoStar Realty Info., Inc.*, 8:08-CV-1227-T-30MSS, 2008 WL 4097790, at *2 (M.D. Fla. Sept. 3, 2008) in support of their argument. *Klein & Heuchan, Inc.* stands for the proposition that "[t]he Eleventh Circuit follows the first to file doctrine, which provides that in the event of parallel litigation in different courts, the first court in which jurisdiction attaches should hear the case 'in the absence of compelling circumstances.' " *Id*. (quoting *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Haydu*, 675 F.2d 1169, 1174 (11th Cir. 1982)).

Defendants' reliance on this case is misplaced. *Klein & Heuchan, Inc*. dealt with a motion to dismiss or transfer the case to a related state court matter. It cited the first-in-time rule in the context of forum shopping, where one party files a declaratory action in state court in anticipation of the adverse party filing a complaint regarding the same dispute in federal court. *Id*. at *2. Although the Court agrees with the general proposition, the rule anticipates that both courts at issue have jurisdiction over the case. *See Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 675 F.2d at 1174 ("It should make no difference whether the competing courts are both federal courts or a state and federal court with *undisputed concurrent jurisdiction*.") (emphasis added). In this case, the Court is not determining the proper forum, but is evaluating its subject matter jurisdiction.

And, to the extent that the Court had jurisdiction, the circumstances would justify departure from the general rule. *See Klein & Heuchan*, Inc., 2008 WL 4097790, at *2 ("[A]nticipatory filing may justify a departure from this rule. … The matter is one of discretion for the trial court."). The first-to-file rule is not a hard-and-fast rule; it merely creates a presumption

in favor of the forum of the first-filed action that can be overcome by compelling circumstances. *See Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 (11th Cir. 2005).

Defendants filed the Valdez State Action first. The state court held a hearing on an Emergency Motion to Appoint a Receiver, after which it appointed a consultant to oversee the work of NSI's forensic accountant. Valdez then voluntarily dismissed the action without prejudice just before the continued hearing on the motion. *See* Doc. 6-2. A month later, Valdez and NSI filed the Valdez Federal Action. A mere two days later, Plaintiffs filed this action in state court, and quickly filed the Emergency Motion. On that day, Plaintiffs were aware of the Valdez Federal Action as evidenced by their Waiver of Service of Summons. Doc. 1-2. But it does not appear as though Plaintiffs were forum shopping, they were instead continuing to pursue their injunction remedy in the original forum chosen by Defendants. The Defendants have changed the forum within which they want to resolve these related disputes. These are compelling circumstances justifying departure from the first–filed rule. Therefore, the Court rejects Defendants' argument that it has subject matter jurisdiction pursuant to the first-filed rule.

The Defendants' argument that remand would be futile since the state court would have to stay this action is premature. *See* Doc. 12 at ¶ 31, § III.C. As noted by Defendants, "when a previously filed federal action is pending between the same parties or privies on the same issues, a subsequently filed state court action ordinarily should be stayed until the determination of the federal action." *City of Miami Beach v. Miami Beach Fraternal Or. of Police*, 619 So. 2d 447, 447 (Fla. 3d DCA 1993). But the state trial court has discretion in denying a stay when factors are present that outweigh the need for state-federal comity. *Id*. at 448. *See also Shooster v. BT Orlando Ltd. Partn.*, 766 So. 2d 1114, 1116 (Fla. 5th DCA 2000) ("Florida litigation need not be stayed because of a previously filed action in a federal district court in Florida."). This Court has not made

a determination as to whether it has subject matter jurisdiction in the Valdez Federal Action. And this Court will not speculate as to the state trial court's determination as to whether factors exist that outweigh the need for state-federal comity.

### f. Diversity Jurisdiction

Absent federal question jurisdiction presented on the face of Plaintiffs' properly pleaded Complaint, the only basis for the removal of a state court action to federal court is diversity jurisdiction. *See Lindley v. F.D.I.C.*, 733 F.3d 1043 (11th Cir. 2013), *aff'd sub nom. Lokey v. F.D.I.C.*, 608 Fed. Appx. 736 (11th Cir. 2015). Although Defendants have not alleged subject matter jurisdiction based on diversity, the Court notes that the Complaint does not allege sufficient facts to establish diversity. It alleges that Bracciale and Valdez reside in Florida. Doc. 2 at ¶¶ 2, 4. But citizenship, not residence, is the determining factor. *See Taylor v. Appleton*, 30 F.3d 1365, 1367 (11th Cir. 1994) ("Citizenship, not residence, is the key fact that must be alleged ... to establish diversity for a natural person."). And it does not list the members of the limited liability company which is required to establish its citizenship. *See Rolling Greens MHP, L.P. v. Comcast SCH Holdings L.L.C.*, 374 F.3d 1020, 1021-22 (11th Cir. 2004) (holding that a limited liability company is a citizen of each state in which any of its members, limited or general, are citizens). Therefore, the Court cannot determine whether complete diversity exists from these allegations. *See* 28 U.S.C. § 1332(a).

And where one of the defendants is a Florida citizen, as NSI is here, the case cannot be removed to federal court in Florida based on diversity. *See North v. Precision Airmotive Corp.*, 600 F. Supp. 2d 1263, 1267 (M.D. Fla. 2009) ("Pursuant to 28 U.S.C. § 1441(b), actions founded upon diversity 'shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.' "). Therefore, the

Defendants have not met their burden to establish that this Court has subject matter jurisdiction over this case under either federal question or diversity jurisdiction.

### g. Plaintiffs' Request for Attorneys' Fees

In their motion, Plaintiffs request an award of attorneys' fees pursuant to 28 U.S.C. § 1447(c), which provides in part that "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." This Court may award attorneys' fees under the attorney fee provision of the removal statute only where the removing party lacked an objectively reasonable basis for seeking removal. *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005). "In applying this rule, district courts retain discretion to consider whether unusual circumstances warrant a departure from the rule in a given case." *Id.*

The Eleventh Circuit has noted that the reasonableness standard enunciated by the Supreme Court was meant to balance " 'the desire to deter removals sought for the purpose of prolonging litigation and imposing costs on the opposing party, while not undermining Congress' basic decision to afford defendants a right to remove as a general matter, when the statutory criteria are satisfied.' " *Bauknight v. Monroe County, Fla.*, 446 F.3d 1327, 1329 (11th Cir. 2006) (quoting *Martin*, 546 U.S. at 140). Therefore, "there is no indication that a trial court should ordinarily grant an award of attorney's fees whenever an effort to remove fails." *Kennedy v. Health Options, Inc.*, 329 F.Supp. 2d 1314, 1319 (S.D. Fla. 2004).

Although, there is no "bright line rule" as to the definition of "objectively reasonable," courts that have applied the *Martin* standard typically focus upon whether the removing party has offered a credible reason for removal, even if it later becomes clear that the removing party was wrong on the facts or the law. In this case, it turns out that Defendants were wrong on the law. The

circumstances in this case do not justify a grant of attorneys' fees. Therefore, the Court will deny the request for attorneys' fees.

### h. Defendants' Request for Sanctions

Defendants argue that the Court should sanction Plaintiffs for their false designation of this matter as an "emergency." Doc. 12 at § III.C. Pursuant to Middle District of Florida Local Rules "[t]he unwarranted designation of a motion as an emergency motion may result in the imposition of sanctions." M.D. Fla. L.R. 3.01(e). Although the Court agrees that no emergency exists in this case, sanctions are not appropriate given the circumstances, including the imposition of the TRO, the race to the courthouse between the parties, and the overall allegations involved in the dispute. Therefore, the Court will deny Defendants' request for sanctions.

## IV. CONCLUSION

The Complaint alleges straightforward claims of default on a promissory note and breach of fiduciary duty. The claims are governed by state law, and no federal question exists on the face of the Complaint. Although the Defendants' defenses may implicate federal regulations, the potential defenses are insufficient to confer jurisdiction on this Court. And the first filed rule does not apply. Defendants have not otherwise met their burden to establish this Court's subject matter jurisdiction. Therefore, the Court will grant Plaintiffs' motion in part and remand this case to state court.

**Accordingly, it is ORDERED**:

1. Plaintiffs' Emergency Motion to Remand, Motion for Attorneys' Fees under 28 U.S.C. § 1447(c) and Motion for Expedited Briefing Schedule (Doc. 6) is **GRANTED–in–PART** and **DENIED–in–PART**.

2. This case is **REMANDED** to the Thirteenth Judicial Circuit in and for Hillsborough County, Florida.

3. The Clerk is directed to send a certified copy of this Order to the Clerk of Court for the Thirteenth Judicial Circuit in and for Hillsborough County, Florida.

4. Plaintiffs' request for an award of attorneys' fees is **DENIED**.

5. Defendants' request for sanctions is **DENIED**.

6. The Clerk is directed to terminate all pending deadlines and motions and **CLOSE** this case.

**DONE AND ORDERED** in Tampa, Florida on September 18, 2017.

*Charlene Edwards Honeywell*
Charlene Edwards Honeywell
United States District Judge

Copies to:
Counsel of Record and Unrepresented Parties, if any